**FIRST BRANDS CORPORATION,**
Plaintiff-Appellant,

v.

**FRED MEYER, INC. and BASF**
**Wyandotte Corporation,**
Defendants-Appellees.

No. 85–4146.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1986.

Decided Feb. 6, 1987.

Kenneth R. Umans, Thomas A. Kain, Julie A. Lauber, New York City, for plaintiff-appellant.

Thomas A. Smart, New York City, and Randolph C. Foster, Portland, Or., for defendants-appellees.

Before J. BLAINE ANDERSON, HUG, and CANBY, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Union Carbide ("Carbide")[1] manufactures and sells the nationally known PRESTONE II brand antifreeze. Carbide filed a motion for a preliminary injunction against

---

1. Although First Brands Corporation has been substituted in the place of Union Carbide as the party plaintiff-appellant, we will continue to refer to Union Carbide ("Carbide") throughout this opinion.

Fred Meyer, Inc. ("Meyer") and BASF Wyandotte Corporation ("Wyandotte") to prevent them from selling their private label antifreeze in yellow-colored, "F-style" shaped, one gallon jugs. Carbide claims that sales of antifreeze in these yellow containers by sellers of private label antifreeze products are an infringement upon the trade dress of PRESTONE II antifreeze under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the common law of trade dress and the law of unfair competition. The district court denied Carbide's motion for a preliminary injunction. We affirm.

## 1. DISCUSSION

### A. Standard of Review

■ A district court's order regarding preliminary injunctive relief is subject to limited review. The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 722–23 (9th Cir.1985). *See also Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).

### B. Preliminary Injunction

■ To obtain a preliminary injunction, a party must demonstrate either (1) a combination of probable success on the merits *and* the possibility of irreparable injury if relief is not granted, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Sardi's*, 755 F.2d at 723; *Apple Computer*, 725 F.2d at 523. Carbide argues on appeal that it is entitled to a preliminary injunction because it has demonstrated probable success on the merits and possible irreparable injuries. It also contends that the district court applied an incorrect legal standard and clearly erred in some of its findings of fact.

### 1. Probable Success on the Merits

■ To establish probable success on the merits in an action for trade dress infringement brought under § 43(a) of the Lanham Act, the common law, or the law of unfair competition, Carbide must demonstrate that PRESTONE II's trade dress is protectable. Carbide must prove that its trade dress: (1) is nonfunctional, (2) has acquired a secondary meaning, and (3) is likely to be confused with Meyer-Wyandotte's private label antifreeze products by members of the consuming public. *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir.1984). *See Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 772 (9th Cir.1981).

#### a. Functionality

The question in the instant action is whether PRESTONE II's trade dress (a yellow, F-style jug) is nonfunctional. If it is, then it may be protectable.

■ In determining functionality, a product's trade dress must be analyzed as a whole. *See California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (9th Cir.1985). The district court, viewing PRESTONE II's trade dress as a whole,[2] held that the F-style design was functional; that the antifreeze packaging industry had a competitive need for the color yellow, thereby making the color yellow functional; and "that this particular combination of [these] otherwise unprotectable elements cannot be deemed protectable trade dress."

■ "[A] product feature is functional if it is essential to the [product's] use ... or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). The parties agree that the *shape* of the F-style jug is functional. The parties have stipulated that its shape is conducive

**2.** Carbide's contention that the district court failed to analyze the combination of PRESTONE II's container design and color features as a whole is meritless. The district court clearly held that the combination of the container's shape and color is not protectable.

to stacking for shipping, displaying and storage. The shape is convenient for consumer use and the F-style jug is less expensive to manufacture. Carbide argues, however, that the district court erred in determining that the color yellow was a functional feature. Specifically, Carbide contends that the district court should not have used the color depletion theory and erroneously applied the "aesthetic" functionality test.[3] Carbide argues that the combination of the concededly functional F-style *shape* and the nonfunctional *color* yellow make these containers, as a whole, nonfunctional and thereby a protectable trade dress.

Under the color depletion theory, there are a limited number of colors in the palette which may be depleted if trademark registrants are allowed to prevail. *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1120 (Fed.Cir.1985). The district court held that there was a competitive need for the color yellow in the antifreeze packaging industry and therefore yellow was not protectable trade dress. Carbide argues that under *Owens-Corning*, the color depletion theory is no longer valid. That case, however, specifically held that the color depletion theory "is *not* faulted for appropriate application." *Id.* (emphasis added). On the contrary, *Owens-Corning* continues to apply the color depletion theory unless there is no competitive need for the color in a particular industry. The Federal Circuit merely declined to establish a *per se* prohibition against registering colors as trademarks. *Id.*

Confronted with an unusual set of facts the court in *Owens-Corning* established a very limited rule that in certain situations a particular color could itself be registered as a trademark. Using a two-step analysis, the Federal Circuit court determined first that there was no competitive need in the insulation industry for the color pink to remain available to all insulation producers *and*, second, that pink insulation, following the extraordinary and intense advertising campaigns featuring the "Pink Panther," had acquired a secondary meaning. *Owens-Corning*, 774 F.2d at 1122–27. In the present case, the district court held that a "competitive need for the color yellow" existed for the antifreeze packaging industry and, as we discuss below, that the color yellow in combination with the F-style jug had not achieved a secondary meaning.

Other than in extraordinary situations, such as that presented in *Owens-Corning*, the general rule remains that an element of distinctiveness of shape in combination with the color still exists before a trademark will be granted.[4] "It is a matter of degree how well defined must be the design ... upon which the color is imposed. The use of one color merely as a background on a package ... is usually rejected as having no trademark significance." 1 J. McCarthy, *Trademarks and Unfair Competition*, 7:17 (citing numerous cases). The F-style jug is the predominant container design in the antifreeze industry. It was not an abuse of discretion for the district court to conclude, for purposes of a prelimi-

---

**3.** In this circuit, the "aesthetic" functionality test has been limited, *Vuitton*, 644 F.2d at 773, if not rejected, *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 895 (9th Cir.1983), in favor of the "utilitarian" functionality test. Despite Carbide's argument to the contrary, the district court did not use the "aesthetic" functionality test. Although the district court did mention that some antifreeze sellers selected a yellow jug because it was the most attractive background for their labels, it is clear that the district court based its decision on the utilitarian notion that yellow is a primary color and to rule in Carbide's favor would lead to color depletion.

**4.** Carbide's reliance on pharmaceutical drug cases in an effort to convince this court that

color and ordinary shape may be protected as a trademark is misplaced. These cases are distinguishable. Unlike the antifreeze industry where the shape and size of the container is functional, neither the capsule size nor shape is functional. Thus, rulings protecting color, and size and shape of drug capsules do not prevent competitors from using the same color in combination with different sizes and shaped capsules. Furthermore, background color is afforded stronger protection in drug cases because confusion of source or product can have disastrous consequences. *See, e.g., SK & F Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1061, 1063, 1066 (3d Cir.1980).

nary injunction, that if Carbide were granted protection of its PRESTONE II trade dress, it would in effect be getting a trademark on the color yellow as a background color for an ordinary-shaped container. As the district court found, this would deplete a primary color available to competitors and deprive them of a competitive need. That finding, and the district court's use of the color depletion theory, are not clearly erroneous. Even if there were no competitive need for the color yellow in the antifreeze packaging industry, Carbide would still need to prove that its yellow, F-style jug had acquired a secondary meaning. The district court found no such secondary meaning and, as we discuss below, that finding was not clearly erroneous.

#### b. Secondary Meaning

 Whether a particular trade dress has acquired secondary meaning is a question of fact subject to the clearly erroneous standard of review. *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir.1983); *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 477–78 (5th Cir.1974). A product's trade dress attains secondary meaning when the purchasing public associates the dress with a single producer or source rather than just the product itself. *Inwood Laboratories*, 456 U.S. at 851 n. 11, 102 S.Ct. at 2187 n. 11; *LeSportsac*, 754 F.2d at 78. Carbide contends that PRESTONE II's trade dress had attained secondary meaning through millions of dollars in advertising PRESTONE II and because Carbide had been the exclusive user of the yellow, F-style jug for more than five years. Evidence of sales, advertising and promotional activities may be relevant in determining whether a trade dress has acquired a secondary meaning. *Brooks*, 716 F.2d at 860. *See also LeSportsac*, 754 F.2d at 78. However, the advertising and promotional activities must involve "image advertising," that is, the ads must feature in some way the trade dress itself. *Brooks*, 716 F.2d at 860. Otherwise, even evidence of extensive advertising or other promotional efforts would not necessarily indicate that prospec-

tive buyers would associate the trade dress with a particular source. *Id.* "[A] 'large expenditure of money does not in itself create legally protectable rights.' [citation omitted]." *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970). The test of secondary meaning is the effectiveness of the effort to create it. *Id.* at 802. The district court found that Carbide's "advertising campaign has not stressed the color and shape of the antifreeze jug so as to support an inference of secondary meaning." Prior to the hearing before the district court, Carbide did not attempt to engender consumer identification with the yellow, F-style jug. It did not, for example, urge consumers to look for the "familiar yellow jug." The district court's finding that Carbide's extensive advertising budget failed to establish a secondary meaning is not clearly erroneous.

Carbide further claims that a survey it conducted proves that the consuming public strongly associates the yellow, F-style jug with PRESTONE II, thereby establishing a secondary meaning. The district court found that the survey was flawed because it biased respondents, did not control for guessing, and failed to take into account the strong association of the brand name PRESTONE II with antifreeze in general. These reasons, rather than the trade dress, may have been why the survey takers identified the yellow, F-style container with PRESTONE II. Thus the district court's findings are not clearly erroneous.

#### c. Likelihood of Confusion

 Even if Carbide could prove that a secondary meaning had been attained by PRESTONE II's trade dress, the dispositive issue in trade dress cases is the possibility of consumer confusion as to the source of the product. "Regardless of how much secondary meaning it possesses, a product's trade dress will not be protected from an imitator that is sufficiently different in its features to avoid such confusion." *Freixenet*, 731 F.2d at 151. The test is whether there is a likelihood of confusion

resulting from the total effect of the defendant's product and package on the eye and mind of an ordinary purchaser. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 8:3. The district court found that:

> The ordinary purchaser is not likely to confuse Union Carbide's antifreeze with the antifreeze of Wyandotte and Fred Meyer. The labels on these antifreeze containers are substantially dissimilar. The labels form a major part of the surface area of the one-gallon jugs and employ entirely different design and/or color schemes. No words similar to "PRESTONE II" appear. Different type size and letter colors are used. Union Carbide has failed to produce credible evidence that ordinary consumers are confusing, or are likely to confuse, antifreeze containers bearing labels with these substantial differences. While the *possibility* of confusion almost always exists, the test is likelihood of confusion, and it has not been demonstrated. (emphasis in original).

The district court's findings are not clearly erroneous. These findings are supported by *Freixenet*, 731 F.2d 148. In that factually similar case, Freixenet moved for a preliminary injunction alleging trade dress infringement because Admiral's frosted black wine bottle was identical in shape and color to its own. The district court's denial of the preliminary injunction was upheld because the "labels of the two bottles were so dissimilar as to rule out any possibility of confusion" in the minds of the consuming public. *Id.* at 151.

■■■ Carbide claims that the district court erred in failing to address the issue

of likelihood of confusion under Carbide's *infringement* claim and in finding no likelihood of confusion under Carbide's *unfair competition* claim.[5] Carbide specifically argues that the district court failed to examine all eight factors laid out in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)[6] and, instead, based its finding that there was no likelihood of confusion *solely* on the fact that the labels were sufficiently distinct to prevent confusion. At the preliminary injunction stage of a proceeding, the trial court is not required to consider all the factors set forth in *Sleekcraft*. *Apple Computers*, 725 F.2d at 515. In fact, for the limited purpose of a preliminary injunction motion, the differences in the labels are sufficient for a finding of no likelihood of confusion. *Freixenet*, 731 F.2d at 151–52.

■■■ Carbide further claims that by focusing solely on the differences in the labels, the district court failed to consider the possibility of associative confusion. This type of confusion may arise not only where a consumer purchases a product thinking it is another, but also where there may be a mistake as to the sponsorship, quality or association of a product. *HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 716–17 n. 7 (9th Cir.1974). We do not agree with Carbide's contention. A fair interpretation of the district court's opinion indicates that it did consider associative confusion. It specifically found that "Union Carbide has failed to prove that the public *associates* the yellow, F-style jug with a single source of antifreeze." Furthermore, Carbide's contention that associative confusion exists is based on Meyer's alleged practice of intentionally "jumbling" together (intermixing) its private label brand with PRES-

---

5. Because the test is identical under either trade dress infringement or unfair competition (i.e., likelihood of confusion), we make no distinction between the two for purposes of our discussion and find no error in the district court's failure to make such a distinction.

6. In determining whether confusion between related goods is likely, the following eight factors have been identified by this court:
 (1) strength of the mark;
 (2) proximity of the goods;

(3) similarity of the marks;
(4) evidence of actual confusion;
(5) marketing channels used;
(6) type of goods and the degree of care likely to be exercised by the purchaser;
(7) defendant's intent in selecting the mark; and
(8) likelihood of expansion of the product lines.
*Sleekcraft*, 599 F.2d at 348–49.

TONE II. However, the record is clear that "side-by-side" display is the norm—not "jumbling." The district court's finding that no associative confusion existed is not clearly erroneous.

 Finally, intent of a defendant in adopting his trade dress is a critical factor, since if the trade dress were adopted with the intent of depriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity. *See Chevron Chemical Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 703–04 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982). Carbide argues that the evidence strongly supports a finding that Meyer-Wyandotte adopted a trade dress similar to Carbide's in order to pass off their product as PRESTONE II. The district court found no such intent. Intent is a pure question of fact subject to the clearly erroneous standard of review. *Pullman-Standard v. Swint,* 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). The district court's finding was not clearly erroneous.

### 2. Irreparable Injury

Because Carbide failed to show a likelihood of success on the merits, we need not decide whether denial of the injunction will lead to irreparable injury. In order for Carbide to be granted a preliminary injunction on the ground it asserts, it must show *both* a probability of success on the merits *and* the possibility of irreparable injury. *Sardi's,* 755 F.2d at 723. The district court's denial of the motion for a preliminary injunction is

AFFIRMED.