**WHITE SWAN, LTD., Plaintiff,**

**v.**

**CLYDE ROBIN SEED COMPANY, INC., Defendant.**

No. C 88–4540 SC.

United States District Court, N.D. California.

Sept. 8, 1989.

Neil A. Smith and Deborah Bailey–Wells, Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff.

Harris Zimmerman and Michael J. Cronen, Oakland, Cal., for defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

Plaintiff White Swan, Ltd. ("White Swan") is an Oregon based marketer of

garden products. Since May, 1986, White Swan has been marketing a line of flower seeds in a cylindrical, shaker-type container under the mark "SHAKE, SCATTER & GROW."

Defendant Clyde Robin Seed Company ("Clyde Robin") is a competing marketer of flower seed products. Around July 1988, Clyde Robin introduced a line of flower seeds intended to be grown in the garden and brought into the home for interior decoration entitled "TOWN HOMES & COUNTRY GARDENS." These seeds are marketed in the same size and type of cylindrical can as plaintiff's product.

White Swan brings this action for trademark/trade dress infringement and unfair competition under the Lanham Trade–Mark Act, 15 U.S.C. § 1051, et seq. White Swan also asserts claims based on statutory and common law trademark/trade dress infringement alleging that Clyde Robin's product packaging is unlawfully similar to the trade dress of its product consisting of the container and design found on the label. White Swan further claims that Clyde Robin has infringed its trademark on certain portions of the label design. This court has previously denied White Swan's motion for a preliminary injunction to stop defendant from selling its product. The matter is now before the court on defendant Clyde Robin's motion for summary judgment on all claims.

Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## I. TRADE DRESS

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for trade dress infringement. Plaintiff argues that its trade dress consists of the "total image" of its flower seed product including its shaker-type can and the arrangement of words and designs thereon. However defendant asserts that this claimed trade dress is, as a matter of law, unprotectable and therefore uninfringed.

A trade dress is protectable when it is a mere arbitrary embellishment or form of dress adopted primarily for identification purposes. *Fabrica, Inc. v. El Dorado Corp.*, 697 F.2d 890, 894 (9th Cir. 1983). In order to prevail on its claim plaintiff must show that its trade dress: (1) is nonfunctional, (2) has acquired a secondary meaning, and (3) is likely to be confused with defendant's trade dress by members of the consuming public. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987).

### 1. *Functionality*

A feature is nonfunctional if it is a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product. *Uniden Corp. of America v. Unipacific Corp.*, 223 U.S.P.Q. 70, 73 (C.D. Cal.1983). Functionality is a finding of fact. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987) (error for trial court not to give functionality instruction to jury). Thus in order to prevail, defendant must show that no

reasonable jury could find the White Swan trade dress to be nonfunctional.

Defendant's analysis dissects plaintiff's trade dress into two basic elements, (1) the shaker top can which, standing alone, is undeniably functional and (2) the arrangement of words and designs on the label which defendant claims is no more than a general description of marketing and design industry standards for the placement of product information for the consumer. Since defendant claims that neither of these elements is protectable, both being functional, defendant asserts that the White Swan product is functional and unprotectable.

■ This court finds that defendant has erred in its analysis. In determining functionality, a product's trade dress must be considered in its entirety. *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985). Functional elements that are separately unprotectable can be protected together as part of a trade dress. *Fuddruckers*, 826 F.2d at 842. Thus the inquiry for functionality must not focus on the individual elements of a trade dress, it must focus on whether a "distinctive visual impression" has been created. *Id.*

■ White Swan does not claim that its shaker top can alone is entitled to protection. Nor does White Swan claim that the company names, logos, color schemes or trademark words used on the packages are deceptively similar. Rather, White Swan's trade dress claim is based upon the overall combination of its particular shaker-top can and the *arrangement* of words, designs, and colored photographs on the label. This court finds that such a visual combination may form a protectable trade dress. Merely alleging that the White Swan arrangement imparts consumer information in accordance with the industry standard certainly does not invalidate this combination as protectable trade dress; this court would be hard pressed to name a protected trade dress that did not impart *some* product information. However trade dress uniqueness (and thus protectability) results from the manner in which the information

is imparted, not from the fact of its impartation. Thus the fact that White Swan's trade dress imparts such information is therefore irrelevant.

2. *Secondary Meaning*
    A. "Inherent Distinctiveness"

■ A product's trade dress acquires secondary meaning when the purchasing public associates the dress with a single producer or source rather than just the product itself. *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 851, 102 S.Ct. 2182, 2187, 72 L.Ed.2d 606 (1982). White Swan asserts that there is no need to establish secondary meaning where a trade dress is "inherently distinctive." As the court in *Fuddruckers supra*, pointed out, secondary meaning is probative of whether a trade dress is distinctive, in the trademark sense of identifying the source of a product or service to an appreciable portion of the purchasing public. If a trade dress is "inherently distinctive", the argument goes, it would be superfluous to require a second showing of secondary meaning. *See Fuddruckers* at 843. In support for its assertion that the White Swan trade dress is "inherently distinctive", White Swan points out that the Lanham Act, 15 U.S.C. § 1051, *et seq.*, provides for the federal registration of marks which are inherently distinctive. White Swan asserts that as the owner of a federal registration for its trade mark, they have no need to prove that their trade dress has a secondary meaning.

The court is unpersuaded by this reasoning. As noted above (and argued by White Swan itself), White Swan's trade dress encompasses more than just its registered trade mark. Although one court has indicated that a registered trademark which is part of a trade dress is an *indication* of the "inherent distinctiveness" of the trade dress itself, no court has suggested that it is the sole factor in such a determination. *See, Ambrit, Inc. v. Kraft, Inc.*, 805 F.2d 974, 980 n. 22 (11th Cir.1986).

Moreover although other circuits have clearly stated that an inherently distinctive trade dress may be protected without proof

of secondary meaning, the Ninth Circuit has refused to take such a step. In *Fuddruckers* the court left the question open and noted that if consumers do not associate plaintiff's trade dress (here a combination of shaker top can with arrangement of words and photographs) with plaintiff then it would be difficult to see how the trade dress distinguishes plaintiff's product from any other product.[1]

The *Fuddruckers* court further stated that even if secondary meaning did not have to be established, in that case "[plaintiff] claims trade dress protection for the impression created by a collection of common or functional elements ... [s]uch an overall impression may receive protection, but it is simply not the sort of ... uncommon trade dress that might qualify as inherently distinctive." *Fuddruckers* at 844. A similar situation prevails here. Plaintiff is attempting to find protection in a trade dress which consists of elements which, in large measure, are individually common to the lawn and garden industry. *See* Cronen Dec.Ex. B, C, D, E, and M. The Ninth Circuit has ruled that while such a trade dress may be protectable in whole, it is not the kind of trade dress which could qualify as "inherently distinctive". Thus the question for the court remains whether White Swan has presented enough evidence of secondary meaning to avoid summary judgment.

**B. Secondary Meaning is Issue of Fact**

■ Whether a particular trade dress has acquired a secondary meaning is a question of fact. *First Brands*, 809 F.2d at 1383. This fact may be determined by considering such factors as length and exclusivity of trade dress use, advertising, sales figures, number of customers, unsolicited media coverage and whether there is any evidence of deliberate copying of the plaintiff's trade dress. *Fuddruckers*, 826 F.2d at 844; *St. Ives Laboratories v. Nature's Own Laboratories*, 529 F.Supp. 347, 349–50 (C.D.Cal.1981).

White Swan has asserted that secondary meaning has been established through "image advertising," use of its trade dress for approximately two years, and what they describe as extensive sales of their product. White Swan refers to supporting declarations from persons in the seed industry, who claim that the overall image of White Swan is unique and has not appeared in the market before. *See* Oliphant Declaration ¶ 5–6; Farr Declaration ¶ 5. Finally, as noted, intent to copy a particular product is indicative of the existence of secondary meaning and White Swan has produced some evidence which points in this direction. For example, in the designing process, repeated references were made to various elements of the White Swan product packaging that defendants desired to emulate and the White Swan product itself was displayed at designing meetings.[2] *See* Bailey Wells Declaration, ¶ 5.

Defendant Clyde Robbins, however, claims that the White Swan product has been "on the shelf" for too short a period (two years) has not been extensively advertised, has not sold in a sufficiently large amount, and contains trade dress elements which are widely used in the garden and seed industry. Furthermore, they claim that White Swan has not pursued other seed marketers that employ similar trade dress elements. All of this leads defendant to assert that none of White Swan's features are so uniquely identified with the

---

**1.** *Chevron Chemical Co. v. Voluntary Purchasing, Inc.,* 659 F.2d 695 (5th Cir.1981) was the first case to dispose of the secondary meaning requirement for trade dress. There Judge Rubin persuasively argued that since trademark law only calls for a demonstration of secondary meaning when the claimed trademark is itself undistinctive (such as through the utilization of a geographic or descriptive name), trade dress law should require no more of a demonstration. Thus if the features sought to be protected serve no descriptive function or do not assist in packaging, they are protectable. *Chevron* at 702.

**2.** Even if plaintiff can show that defendant deliberately copied certain features of its label design, this does not *necessarily* establish that the copying was done with the intention to confuse customers and capitalize on recognition of the White Swan product. It is possible that defendant copied the features for other reasons and perceived them as lacking any secondary meaning. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 844–45 (9th Cir.1987).

plaintiff's products so as to have acquired a secondary meaning in the minds of the consuming public. In support defendant has, for example, referred to the *First Brands* case *supra,* where the Ninth Circuit found that no secondary meaning where plaintiff had used a trade dress for more than five years and had spent millions of dollars in advertising.

Defendants have failed to meet their summary judgment burden. The court notes that a similar period of time of use of a trade dress has been deemed sufficient to establish secondary meaning. *See Uniden Corp. of America v. Unipacific Corp.,* 223 U.S.P.Q. 70, 71 (C.D.Cal.1983). Although the product in that case was extensively advertised, this court does not see the relevance in comparing the sales and advertising figures from other industries with that of the seed industry; establishing secondary meaning will obviously take a different effort depending on the product.

Plaintiff has put forth some evidence of advertising which features its (non-utilitarian) trade dress. *See* Saltzman Declaration, ¶ 4. And merely because White Swan has not filed suit claiming trade dress infringement prior to this lawsuit, this does not mean this lawsuit has been brought in bad faith; it may merely be an indication that White Swan has had no occasion to protest the use of alleged trade dress infringement. This court finds that enough evidence exists, in terms of advertising sales and copying, for White Swan to avoid summary judgment on the issue of secondary meaning.

### 3. *Likelihood of Confusion*

Once plaintiff has shown that its trade dress is protectable, it must show that Clyde Robin's use of its trade dress is "likely to confuse consumers." *Fuddruckers,* 826 F.2d at 844. The relevant test is whether there is "a likelihood of confusion resulting from the total effect of the defendant's product and package on the eye and mind of an ordinary purchaser." *First Brands Corp.,* 809 F.2d at 1383, 84, *citing* 1 J. McCarthy, Trademarks and Unfair Competition, § 8:3.

To determine whether a likelihood of confusion exists, a number of factors are analyzed including: the similarity of the dress; the similarity of the goods; the proximity of their marketing channels; evidence of actual confusion; defendant's intent in selecting the mark and; the type of goods and degree of care exercised by consumers in purchasing the goods. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1360 (9th Cir.1985) (en banc). It is clear that plaintiff, considering these factors, has presented enough evidence to avoid summary judgment on this issue.

### A. Evidence of Actual Confusion

Plaintiff has submitted a number of declarations attesting to actual confusion between plaintiff's and defendant's products at various trade shows and by wholesale buyers of garden products. *See* e.g. Farr Declaration at ¶ 7; Rice Declaration, ¶ 2. Since professional buyers are presumed to be more discriminating than the average consumer, this court finds that these declarations have some probative value. 2 J. McCarthy, Trademarks and Unfair Competition, § 23.29. Although defendant has characterized this evidence as a "mere scintilla" of confusion evidence, this court does not agree with such a characterization and finds that plaintiff has presented some evidence of actual confusion.

### B. Similarity of the Goods

Both the White Swan and Clyde Robin products are flower seeds. The Clyde Robin product is designed to be grown outdoors and then brought indoors for interior design as is one of the White Swan products, "Cutting Garden." Other White Swan products, such as "Butterfly Garden" and "Hummingbird Garden," are intended to be attractants for birds and insects. It is obvious to this court that a reasonable jury could certainly find the goods to be very similar.

### C. Proximity of Marketing Channels

Defendant has alleged that the relative products are not sold in the same stores. However plaintiff has presented evidence that retail outlets sell both products and

that mail order advertisements for both products appear in the same catalogs. *See* Farr Declaration, ¶ 3; Saltzman Declaration, ¶¶ 4 and 7. Thus there is evidence that products are sold through the same channels to similar purchasers.

### D. Similarity of Dress

White Swan claims that Clyde Robin has copied its trade dress by:

(1) using the identical particular type and size of shaker-top can,

(2) positioning its design vertically on one can side,

(3) generally arranging its word trademarks and generic descriptions of seeds on its can in the same places that plaintiff uses on its trade dress,

(4) using and positioning an arch and an ampersand in the same location on its can as plaintiff does, and

(5) using a framed section for a colored photograph of flowers, and positioning that framed section in the same location as on plaintiff's trade dress.

Although this court denied a preliminary injunction, in part on the grounds that there were differences in the dress of the two products, this court cannot say that the two marks are so obviously dissimilar that no reasonable jury could find that the two products were, taken as a whole, confusingly similar.

### E. Defendant's Intent

As the court stated earlier, plaintiff has presented some evidence that defendant intended to take advantage of the goodwill established by plaintiff.

### F. Type of Goods

The plaintiff has characterized these products as inexpensive "impulse" items which a consumer is unlikely to exercise a great deal of care in purchasing. The defendant has pointed out that the planting of the flower seeds takes some effort and purchaser's are likely to use care in picking the item. Since the products are inexpensive, plaintiff has introduced some evidence which tilts in favor of confusion.

In sum, this court finds that plaintiff has established that its claimed trade dress is not, as a matter of law, unprotecta-ble, that the trade dress may have acquired secondary meaning and may be likely to be confused with defendant's product. Therefore, the court denies the summary judgment motion for plaintiff's trade dress claim.

## II. TRADEMARK INFRINGEMENT

Plaintiff also seeks relief based on alleged infringement of its trademark by Clyde Robin. White Swan's trademark registration number 1,443,473 consists of the geometric configuration which is used to house the words and pictures which appear on the label of its product. White Swan's mark is federally registered. Accordingly plaintiff is entitled to a presumption that it owns the trademark registration, that the registration is valid and that it has the exclusive right to use the design. 15 U.S.C. § 1057(b).

The governing standard in trademark infringement actions is "likelihood of confusion." 15 U.S.C. § 1114. Likelihood of confusion is a factual determination. Factors relevant in this determination are (1) the strength of plaintiff's mark; (2) similarity of the marks; (3) marketing channels and proximity of the goods; (4) defendant's good faith in adopting its mark; and (5) evidence of actual confusion. *Nutri/System, Inc. v. Con–Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir.1987).

This court has already found that plaintiff has presented some evidence concerning marketing channels, good faith and actual confusion and the court sees no need to reiterate its discussion regarding those matters. Defendant's summary judgment claim centers, however, on what it regards as the lack of "strength" in the White Swan trademark and the lack of similarity between the two marks.

The "strength" of a mark loosely refers to its inherent distinctiveness relative to the other marks in its field and to the level of recognition which is caused by that distinctiveness. A variety of factors go into the strength of a trademark including its inherent distinctiveness, duration of prod-

uct use, volume of products sold and amount of advertising. *See Grey v. Campbell Soup Co.*, 650 F.Supp. 1166 (C.D.Cal. 1986); 1 J. McCarthy, Trademarks and Unfair Competition, § 11. Generally an arbitrary or fanciful mark, which has no connection to a characteristic of the product itself, is more likely to be considered a strong mark. *See Nutri/System*, 809 F.2d at 605. However ordinary geometric shapes, (e.g. circles, squares), while perhaps arbitrary, are usually regarded as non-distinctive, and are thus more likely to be labeled as weak. More inventive, complex, geometric designs are naturally considered to be stronger. *See, American Can Co. v. Marcal Paper*, 152 U.S.P.Q. 772 (TMTAB 1967); *Permatex v. California Tube Products*, 175 U.S.P.Q. 764 (TMTAB 1972).

Defendant Clyde Robins portrays the White Swan trademark as an inherently weak mark, since it is composed of ordinary geometric shapes. Defendant concludes that defendant's mark is not similar enough to the weak White Swan mark to result in any likelihood of public confusion. White Swan has responded by referring to the fact that the Patent and Trademark Office (PTO) registered their trademark without a showing that the geometric design had acquired a secondary meaning. As White Swan noted, the PTO will not register a background geometric trademark without proof of secondary meaning unless the mark is inherently distinctive and unusual in its field. *See In re Wendy's International Inc.*, 227 U.S.P.Q. 884, 885 (TMTAB 1985). White Swan does not believe that Clyde Robins has effectively rebutted the finding of the PTO.

The PTO registration is certainly an indication of "inherent distinctiveness" of the White Swan mark. Furthermore this court does not believe the mark can be characterized as the most basic type of geometric design. Although this court did previously find, in its order denying the preliminary injunction, that the similarity of the two marks did not weigh in favor of a finding of infringement, the court must decide, considering the evidence in the light most favorable to the plaintiff, whether a rea-sonable jury considering *all* the relevant factors could find a likelihood of confusion.

In this regard the court notes that the "strength" of a mark is only one factor among many interrelated factors which go into the ultimate factual determination. For example, even an extremely weak mark may be infringed if the infringing product and the marks themselves are similar. *See New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1202 (9th Cir. 1979).

Under the foregoing standard, this court must deny the summary judgment motion as the court finds a reasonable jury could find the requisite "likelihood of confusion."

## III. STATE LAW CLAIMS

Defendant has moved for summary judgment on the California state law claims for unfair competition, trademark and trade dress infringement and trademark dilution. As this court has found that summary judgment would be inappropriate for the federal claims of infringement, it will not grant summary judgment on the California claims of unfair competition, and infringement either. The dilution claim however deserves separate scrutiny.

California's dilution statute does not require a likelihood of confusion between the two products. All that needs to be shown is "the likelihood of injury to business reputation or of dilution of the distinctive quality of the mark." Cal.Bus. & Prof.Code § 14330; *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir.1988). Although the statute does not call for any particular level of strength, commentators and courts have stated that the mark must be particularly strong to be able to support a dilution claim. *See* 2 J. McCathy, *supra* § 24:14; *Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849 (D.C.Cal.1985). This requirement seems to be no more than a common sense reflection of the fact that a common type or little known mark is in fact inherently "dilute" and the presence of another similar mark could hardly affect the negligible public perception of the original mark.

Defendant has asserted that there is simply not enough evidence that the White Swan mark has attained the "strength" necessary to support a finding of dilution. Although the court finds the plaintiff's dilution claim to be weaker than its other claims, the court finds that plaintiff has presented enough evidence of secondary meaning and inherent distinctiveness to avoid summary judgment on this matter.

In accordance with the foregoing, defendants motion for summary judgment is hereby DENIED.