**In re PATIO INDUSTRIES, a California Corporation, Debtor.**

**LA HABRA PRODUCTS, INC., Plaintiff and Appellee,**

**v.**

**PATIO INDUSTRIES, etc., Randall J. Humphreys and Robert Humphreys, Defendants and Appellants.**

**No. ED CV 95–00388–RT. Bankruptcy No. SB 94–23827–MG.**

United States District Court, C.D. California.

Oct. 15, 1996.

Patricia A. Holbrook, Irvine, CA, for Plaintiff/Appellee.

Kirk Barber, Ontario, CA, for Debtor and Defendants/Appellants.

OPINION AFFIRMING ORDER GRANTING PERMANENT INJUNCTION IN FAVOR OF LA HABRA PRODUCTS AND AGAINST PATIO INDUSTRIES

TIMLIN, District Judge.

## I.

### *PROCEDURAL HISTORY*

Patio Industries (Patio) is the debtor-in-possession in a Chapter 11 case (Bankruptcy Court Case No. SB 94–23827 MG). Randall Humphreys (Randall) and Robert Humphreys (Robert) are apparently controlling principals, shareholders, and/or directors of Patio. Patio and La Habra Products Inc. (La Habra) both manufacture and distribute exterior stucco.

On or about January 24, 1995, La Habra filed an adversary action against Patio, Randall and Robert (collectively Patio) alleging that in connection with its exterior stucco business, Patio had engaged in conduct which constituted:

(1) trade dress infringement under 15 U.S.C. section 1125(a);

(2) unfair competition under 15 U.S.C. section 1125(a);

(3) unfair competition under California Business and Professions Code sections 17000 et seq.;

(4) unjust enrichment;

(5) dilution of trade name under California Business and Professions Code section 14330;

(6) intentional interference with business advantage; and

(7) intentional interference with contract.

The complaint sought injunctive relief; an accounting; a recall of all infringing Patio advertising materials; delivery of same, plus the means of producing them, to La Habra; a copy of all business records related to Patio's advertising, sale, and distribution of exterior stucco; punitive damages, attorney fees, costs, and such other relief as might be just and proper.

On February 9, 1995 the bankruptcy court heard La Habra's application for a temporary restraining order. The application asserted that Patio was infringing La Habra's trade dress, and was engaging in unfair competition under both state and federal law. The application stated that it was supported by declarations from James Powell, Jerry Hannifan, David Hernandez, Ted Jones and Patricia Holbrook.

At that hearing, the bankruptcy court announced its intent to grant the TRO. It discussed with both sides' attorneys how Patio could change the format of its brochures so that, in the court's opinion, the brochure would not constitute an infringement of La Habra's trade dress. It told Patio's attorney to submit a copy of the changed brochure to La Habra's counsel to make sure there was no disagreement over whether the changes were sufficient to satisfy La Habra. (Transcript 39–61.)

■ Also at the February 9 hearing, Patio waived its right to have a preliminary injunction hearing within 15 days, and the court set a tentative date of March 28 on which the parties could return for "further marching orders" if the parties had not resolved their differences. (Transcript 61–62.) The court also indicated that its decision essentially resolved the case, and that therefore once the preliminary injunction had been complied with, it would become permanent. Patio did not object to this method of resolving the action, nor did it demand an opportunity to put on additional evidence or to go to a jury trial. (Transcript 34:19–24; 37:3–6; 55:24–56:2.) [1]

On March 6, 1995, the bankruptcy court signed an order temporarily restraining Patio from "utilizing, making, manufacturing or distributing any advertising or packaging which is similar to, or which closely resembles and imitates, the advertising or packaging for any products of La Habra Products, Inc., including without limitation Patio's brochure entitled 'Rainbow Stucco—World of

---

**1.** Patio's apparent acquiescence in changing its brochure does not make the permanent injunction nonappealable. *See Heckethorn v. Sunan Corp.*, 992 F.2d 240, 241–242 (9th Cir.1993).

Color,'" but allowing Patio for a limited time to utilize its existing brochure if it covered the wording on the back page of the brochures with new wording sufficiently different from that used by La Habra so that no confusion would occur. In addition, Patio was ordered not to use a plasterer icon on the second and third pages of its brochure, to change the back page as noted above, and to change the configuration of the color chips/samples of stucco color available.

On August 21, 1995, the bankruptcy court's order granting a permanent injunction against Patio was entered.[2] That injunction provides, in relevant part:

"[T]he court finds that this is a proper case for granting of a permanent injunction and that unless the injunction prayed for in the complaint and application be granted irreparable injury will result [to La Habra]:

"IT IS ORDERED that [Patio] . . . shall be and hereby [is] enjoined permanently from acting in, committing or performing, either directly or indirectly, any of the following:

"1. From utilizing, making, manufacturing or distributing any advertising or packaging which is similar to, or which closely resembles and imitates the advertising or packaging for any products of La Habra Products, Inc. including but not limited to the brochure entitled 'Rainbow Stucco—World of Color.'

"2. This order is made on the basis that [Patio] intentionally copied the La Habra Products, Inc. Stucco Brochure and that the similarity of [Patio's] brochures to those of [La Habra] created confusion in the marketplace.

"3. In the event that the permanent injunction is violated by [Patio], the Court will consider significant sanctions against [Patio]."

On August 29, 1995, Patio filed a timely notice of appeal from that order.

**2.** This injunction apparently was based on the evidence presented by the parties in support of

## II.

### *APPELLATE JURISDICTION, STANDARD OF REVIEW, AND APPELLANT'S BURDEN OF AFFIRMATIVELY SHOWING PREJUDICIAL ERROR*

The United States District Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(2). *See also In re The Chisholm Company,* 166 B.R. 706, 712 (D.Colo.1994). An appeal from a permanent injunction is proper under 28 U.S.C. section 1292(a)(1) even though there is no final judgment in the action itself.

On appeal, the district court reviews the bankruptcy court's decision by applying a clearly erroneous standard of review to findings of fact and a de novo standard of review to conclusions of law. *In re Daniels–Head & Associates,* 819 F.2d 914, 919 (9th Cir.1987); *Harbour Lights Marina, Inc. v. Wandstrat,* 153 B.R. 781, 782 (S.D.Ohio 1993).

Appeals to the district court are governed by Bankruptcy Rules 8001 through 8019, as well as by Rule 9005 related to harmless error. Thus, the parties are required to provide references to the record when, for example, they claim that a certain fact was found to be true or that there was evidence in support of a finding. Bankr.Rule 8010. Patio, as appellant, is required affirmatively to show that any error, factual or legal, was prejudicial. Bank. Rule 9005.

## III.

### *ISSUES PRESENTED*

1. Were the bankruptcy court's findings adequate to support the issuance of an injunction? In other words, were the findings of fact sufficiently detailed and exact to indicate the factual basis for the bankruptcy court's ultimate conclusion? Federal Rules of Civil Procedure, Rules 52(a), 65(d); *United States v. Rohm & Haas Co.,* 500 F.2d 167, 177 (5th Cir.1974). (Appellant's Opening Brief 5:17–5:9.)

2. Is there sufficient evidence to support the bankruptcy court's findings that a permanent injunction should issue? (Ap-

and in opposition to the temporary restraining order.

pellant's Opening Brief 5:3–16.) [3] The findings needed to support issuance of this permanent injunction were that there was a likelihood of substantial and immediate irreparable injury and that La Habra's legal remedies were inadequate. *American–Arab Anti–Discrimination Committee v. Reno*, 70 F.3d 1045, 1066–1067 (9th Cir.1995).[4] However, Patio's only assignment of error on appeal is that there was not sufficient evidence to support a finding that La Habra would suffer irreparable injury if the injunction was not granted (Appellant's Opening Brief at 6) and that there was not sufficient evidence to support a finding that La Habra's trade dress was protectable. (Appellant's Opening Brief at 7.)

## IV.

### FACTS

The following facts are taken from the declarations which accompanied La Habra's application for a TRO:

### Declaration of Ted Jones

Ted Jones is a La Habra salesperson. When he told Jack Byrd, a Patio salesperson, that it was not wise for Patio to copy La Habra's color chart, Byrd told him that because La Habra did not "trademark" the color chart, Patio could do whatever it wanted, and that Patio intended to get its chart trademarked and to file an action against La Habra for use of Patio's trademark.

### Declaration of David Hernandez

David Hernandez is a La Habra salesperson. He attended a building industry convention in Reno Nevada and visited the Patio booth there. When he picked up a Patio brochure, Byrd told him, "Don't take any more. After all they are exactly the same as the La Habra stucco charts." Hernandez noticed that, in fact, the Patio brochure was nearly identical to the La Habra brochure.

### Declaration of James Powell

James Powell is La Habra's treasurer. La Habra has been a manufacturer and distributor of building materials and stucco, including exterior stucco, since 1926. Its stucco is marketed to architects, color coordinators, plasterers, builders and consumers, as well as retailers such as Home Base. Its operating area includes 11 of the western states.

La Habra has spent about $200,000 to develop a brochure which includes a color chart of its exterior stucco materials. This brochure is its most important advertising investment. The brochure features a number of distinctive elements, including a logo of a plasterer and three starred statements referring to information about the product. According to Powell, none of the words or graphic features used in the brochure are functional, and the choice of words, logos, colors and text arrangement were based on aesthetic considerations. The court notes that Powell's statement that none of the words or graphic features are "functional" is, in the context of this trade dress case, a legal conclusion.

Powell stated that (1) he was "informed and believe and thereon allege[d]" that Patio was attempting to and was causing "widespread confusion as to the La Habra products throughout the home building industry," (2) he "believe[d] that the La Habra stucco products are of a higher quality that those of Patio Industries and, therefore, the confusion about these products is causing irreparable damage to La Habra since consumers purchasing the inferior Patio Industries' products may believe that they have purchased La Habra products," (3) he was also "in-

---

**3.** Patio misstates the test for issuance of a permanent injunction by citing a case related to issuance of a *preliminary* injunction. (Appellant's Opening Brief, 5:3–16.) Based on its reliance on this inapplicable test, it then contends that there was not substantial evidence to support a finding of *probable* success on the merits and the possibility of irreparable harm to La Habra because Patio failed to prove that its trade dress is protectable pursuant to provisions of section 43(a) of the Lanham Act. (Appellant's Opening Brief 5:11–16.)

**4.** "Irreparable injury and inadequacy of legal remedy are closely related, if not identical, concepts." 19 Federal Procedure (Lawyers Edition 1983) § 47:16 at p. 454. Therefore, the court will decide whether there was sufficient evidence to support the bankruptcy court's finding that La Habra would be irreparably injured if the permanent injunction did not issue.

formed and believe[d] and thereupon allege[d] that Patio Industries sales people are representing that their products are the same quality as La Habra but cost up to $1.00 a bag less than those of La Habra," and (4) he therefore "believe[d] that Patio Industries is diverting La Habra customers from buying La Habra products."

### Declaration of Jerry Hannifan

Jerry Hannifan is La Habra's sales and marketing manager. The brochure in question was designed in early 1992, and put together by La Habra's in-house color committee. Hannifan personally prepared the information on the back of the brochure. Hannifan first learned that Patio had copied La Habra's color charts in October 1994. Hannifan has "received feedback from the building industry that the brochures have created confusion among our consumers. Some of our consumers have asked why the color charts are the same and have wondered whether La Habra is making the stucco product being marketed by Patio."

The following facts are taken from the declarations which accompanied Patio's opposition to the application for a temporary restraining order:

### Declaration of Randall Humphreys

Randall is Patio's president. Patio began using the plasterer "icon" in 1988 on the label for its First Choice Stucco Acrylic Bonder. Attached to his declaration is a copy of one such label. Also attached are copies of the brochures used by Patio and La Habra to advertise their stucco products. These copies include the covers of each brochure, which are quite different in appearance from each other, although both show a house. Each cover also features the name of the company producing it in large, noticeable print.

The following facts are found in the declarations of Powell and Holbrook which accompanied La Habra's reply to Patio's opposition:

### Declaration of Powell

The plasterer logo in question was developed by La Habra from a photograph taken by La Habra before 1983. A copy of the photograph on the cover of the original La Habra brochure is attached to his declaration as Exhibit G. Using this photograph, La Habra designed the logo, and in 1988 began using it on the cover of its color charts, also as shown in Exhibit G. The plasterer logo is not "clip art" in the public domain as suggested by Patio. Other companies which advertise exterior stucco products have designed color charts and brochures without the need to copy La Habra's brochure and charts. Copies of competitors' brochures are attached as Exhibits H through L to Powell's declaration. La Habra and Patio compete in the same marketplace and market to many of the same consumers.

### Declaration of Patricia Holbrook

Patricia Holbrook, La Habra's attorney, spoke to Bob Peterson, a principal of Spectrum Sample Card Company. Peterson told her that his company prepared the Patio brochure from materials provided by Patio, which sent him "cut up material including color chips, text and design along with instructions as to the placement of each element of the brochure."

No additional evidence was presented at the February 9, 1995 hearing, and there were no objections to any of the evidence presented, including the contents of the above-noted declarations.

### V.

### DISCUSSION

### A. Patio Has Failed to Establish that the Trial Court's Findings Were Inadequate

Federal Rules of Civil Procedure, Rule 65(d) provides, in relevant part:

"Every order granting an injunction ... shall set forth the reasons for its issuance; ..."

Federal Rules of Civil Procedure, Rule 52(a) provides, in relevant part:

"In all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon, ... and in granting ... interlocutory injunctions the court shall similarly set forth the findings of fact and conclu-

sions of law which constitute the grounds of its action...." Under Rule 52(a), the issuance of a permanent injunction requires findings of fact and conclusions of law sufficiently detailed to indicate the factual basis for the trial court's ultimate conclusion. *U.S. v. Rohm & Haas Co.*, 500 F.2d 167, 177 (5th Cir.1974).

■ The purpose of requiring the trial court to make findings of fact and conclusions of law is to permit an appellate court to review the trial court's decision. *Weitzman v. Stein*, 897 F.2d 653, 658 (2d Cir.1990). Even if the trial court's findings are not adequate, a reviewing court may still proceed with a review of an injunction if it can discern enough solid facts from the record to enable it to render a decision or if there can be no genuine dispute about omitted findings; but if the findings and record together are insufficient to enable it to be sure of the basis of the decision, it should vacate the order and remand it for further proceedings. *Id.; Ocean Garden, Inc. v. Marktrade Company, Inc.*, 953 F.2d 500, 509 (9th Cir.1991).

Although Patio contends that the court's findings were inadequate, it does not support this contention with any reasoned analysis. It does not state what findings and conclusions were necessary to support the issuance of a permanent injunction in this case, it does not set out what findings and conclusions were actually made, it does not set out what findings and conclusions are missing, and it does not argue that any deficiencies in the findings and conclusions cannot be cured by a review of the record. It is Patio's burden, as appellant, to support its contention with reasoned analysis, and this it did not do.

**B.** ***The Evidence Supports the Bankruptcy Court's Issuance of a Permanent Injunction***

**1.** *Introduction*

■ As noted above, a permanent injunction must be based upon a showing of two factors: (1) a likelihood of substantial and immediate irreparable injury to the party

seeking injunctive relief and (2) that that party's legal remedies are inadequate. *American–Arab Anti–Discrimination Committee v. Reno*, 70 F.3d 1045, 1066–1067, *supra*. Any injury, of course, must be caused by a wrong to be redressable; therefore, there also must be a showing of a wrong. In this case there must be a showing that (1) La Habra had a trade dress, (2) the trade dress was protectable, and (3) Patio infringed such trade dress.

■ Here, the order granting the permanent injunction did contain a conclusion that unless the injunction was granted, irreparable injury would result to La Habra. The conclusion as to irreparable injury was impliedly based on the court's finding of fact that the similarity of Patio's brochures to those brochures of La Habra created confusion in the marketplace.[5] The order did contain a finding of fact that Patio intentionally copied the La Habra Products, Inc. Stucco Brochure (La Habra brochure), but it did not contain a conclusion that La Habra's legal remedies would be inadequate.

Patio has conceded that La Habra's brochure constitutes trade dress. It contends, however, that the brochure is not protectable under section 43(a) of the Lanham Act because the brochure (1) is functional, (2) is not inherently distinctive; (3) is generic and descriptive rather than arbitrary or suggestive; (4) does not identify the source of the brochure or the product presented without reference to La Habra's name on the brochure; and (5) has not acquired a secondary meaning. Put in terms related to appellate review, Patio is contending that there is no substantial evidence to support a finding of the elements necessary for a conclusion that the brochure was protectable trade dress.

**2.** *Functionality*

■ "[E]ligibility for protection under [section] 43(a) depends on nonfunctionality. [Citations.]" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615, (1992) (*Two Pesos*).

---

**5.** In trademark infringement cases, once a likelihood of confusion is established, it is ordinarily presumed that the plaintiff will suffer irreparable harm. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989).

"[A] design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection. [Citation.] This serves to assure that competition will not be stifled by the exhaustion of a limited number of trade dresses." *Two Pesos*, 505 U.S. at 775, 112 S.Ct. at 2760–2761; *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987) (a product feature is functional if it is essential to the product's use or affects the cost or quality of the article). Functionality is a question of fact, reviewable under the clearly erroneous standard. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 514 (9th Cir.1989).

■ In determining functionality, trade dress must be examined as a whole. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381, *supra*. Patio contends that the bankruptcy court did not analyze La Habra's brochure as a whole. (Appellant's opening Brief 8:8–13.) The record clearly shows that while the bankruptcy court looked at the various elements of the brochures, i.e., the color charts, the text, the use of a plasterer logo or icon, and the photographs used on the covers, it also considered the overall effect of the organization of these elements to create each brochure. (See, e.g., transcript 27:4–28:10; 25:25–26:2.)

Patio contends that all stucco brochures are functional because they are essentially identical to the brochures used by all other stucco manufacturers and are essential to the product's use. (Appellant's Opening brief, 9:16–11:11.) It argues that merely because there were other shapes and designs it could have used to produce a workable brochure does not mean that the design it did choose was not nonfunctional, citing *Thomas and Betts Corp. v. Panduit Corp.*, 34 U.S.P.Q.2d 1545, 1994 WL 714619 (1994). It specifically emphasizes that all stucco brochures generally use a four-page format with the inside of the brochure containing color chips indicating the various stucco colors available. (Appellant's Opening brief 10:3–9.)

Patio did not produce evidence below that all stucco brochures use a particular format as described above. However, La Habra produced evidence, in the form of several competitors' brochures, that does support Patio's contention that all stucco brochures use a similar format, i.e., four pages including a color chart. However, the fact that all or most stucco brochures use a four-page format and a chart of color chips does not demonstrate that La Habra's brochure **as a whole** was merely functional. It only shows that those **elements** are functional.

■ When a trade dress consists of multiple individual features forming an overall appearance, protection may be afforded even though individual elements that comprise part of that appearance may be functional. *See, e.g., Vision Sports, Inc. v. Melville Corporation*, 888 F.2d 609, 613, *supra*, (trade dress involves the total image of a product as comprised by various features such as size, shape, color, color combinations, texture and/or graphics); *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir.1981) (although plaintiff could not preempt the use of red and yellow on lawn chemical packaging, it could protect the combination of particular hues of these colors, arranged in certain geometric designs, presented in conjunction with a particular style of printing, in such fashion that taken together they created a distinctive visual impression).

■ Here, while the four-page format and use of color chip chart may be functional, Patio's slavish copying of La Habra's layout and design, including its use of the same plasterer logo or icon, the same arrangement of the same 30 color chips, and the same arrangement of text in relation to the other elements, was not. Thus, the nonfunctional nature of La Habra's brochure was evidenced both by (1) the other competitors' brochures, which showed a number of specific, equally efficient options available to competitors to provide customers with information about their products as well as to show the various colors of stucco offered, and (2) the vast number of other such possible options, which were logically deducible simply by considering the possible permutations of arrangements of different elements within a

brochure format. (See, e .g., Transcript 30:2–19.) Furthermore, it was apparent that rearranging these elements to create a different brochure would not be a particularly costly undertaking (Transcript 47:20–48:8), another factor indicating that the brochure's design was not functional. *See, e.g., Thomas & Betts Corporation v. Panduit Corp.,* 65 F.3d 654, 659 (7th Cir.1995).

In light of the evidence before the bankruptcy court, this court cannot say that the bankruptcy court's implicit finding that the Patio brochure as a whole was nonfunctional was not based on sufficient evidence and was clearly erroneous. *See Tools USA v. Frame Straightening,* 87 F.3d 654, 658, 660 (4th Cir.1996).

### 3. *Inherent Distinctiveness or Secondary Meaning*

■ Patio contends that La Habra's brochure is not inherently distinctive, and, alternatively, that it has not acquired a secondary meaning. A finding that trade dress is inherently distinctive or that it has acquired a secondary meaning is a factual finding which may be overturned only if clearly erroneous. *Vision Sports, Inc. v. Melville Corporation,* 888 F.2d 609, 614, *supra; see Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1069 (7th Cir.1992).

■ Trade dress is "distinctive and capable of being protected if it **either** (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning. [Citations.]" *Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2758, emphasis in original. Trade dress is inherently distinctive if it is capable of identifying a particular source of the product, 505 U.S. at 769, 112 S.Ct. at 2759, and an inherently distinctive trade dress "is not subject to copying by concerns that have an equal opportunity to choose their own inherently distinctive trade dress." *Id.* If a trade dress is inherently distinctive, proof of secondary meaning is superfluous. 505 U.S. at 773–774, 112 S.Ct. at 2760.

■ Proof of intentional copying of another's **trademark,** without any opposing proof, can be sufficient by itself to establish that the trademark has secondary meaning.

*The Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 822–823 (9th Cir.1996); *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1016 (9th Cir.), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). It follows that proof of intentional copying of a **trade dress,** without any opposing proof, also can be sufficient to establish that the trade dress is inherently distinctive and/or has acquired secondary meaning. *Two Pesos,* 505 U.S. at 770, 112 S.Ct. at 2758–2759.

■ Here, there was uncontradicted evidence that Patio intentionally copied La Habra's brochure. Therefore, this court cannot say that the bankruptcy court's implied finding that La Habra's brochure was inherently distinctive and/or had acquired secondary meaning was not based on sufficient evidence and was clearly erroneous.

### 4. *Likelihood of Confusion*

■ Patio also contends that there is no likelihood of confusion between Patio's and La Habra's brochures, and that the bankruptcy court's specific finding to that effect was error. A finding of likelihood of confusion by a trial court is a factual finding which may be overturned only if clearly erroneous. *Ocean Garden, Inc. v. Marktrade Company, Inc.,* 953 F.2d 500, 509, *supra.*

■ Regardless of whether a trade dress is nonfunctional and distinctive, the plaintiff must still show that the defendant's use of the same or similar trade dress is likely to confuse consumers. *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 825 (9th Cir.1993). A likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marketing techniques. *Id.*

■ In determining the likelihood of confusion, a court should consider eight factors:
(1) strength of the mark;
(2) proximity of the goods;
(3) similarity of the marks;
(4) evidence of actual confusion;
(5) marketing channels used;

(6) type of goods and the degree of care likely to be used by the purchaser in selecting the goods;

(7) defendant's intent in selecting the mark; and

(8) likelihood of expansion of the product line. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d at 1384, n. 6, *supra.*

While all such factors are relevant, just as inherent distinctiveness or secondary meaning may be established by evidence of intentional copying alone, so too can likelihood of confusion be established by such uncontradicted evidence. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845–846 (9th Cir.1987).

Here, there was uncontradicted evidence that Patio intentionally copied La Habra's brochure. In addition, there was also evidence of actual confusion, i.e., the statement in Hannifan's declaration, to which Patio failed to object, that he had "received feedback from the building industry that the brochures have created confusion among our consumers. Some of our consumers have asked why the color charts are the same and have wondered whether La Habra is making the stucco product being marketed by Patio." There was also evidence that the goods were of the same kind, and marketed through the same channels, and evidence of great similarity between the two brochures.

Based on the evidence before the bankruptcy court, this court cannot say that the bankruptcy court's specific finding that there was a likelihood of confusion was not based on sufficient evidence and was clearly erroneous.

### 5. *Irreparable Harm*

As noted above, Patio also contends that La Habra failed to prove that it would suffer irreparable injury if the permanent injunction was not granted. Patio's argument is based on the fact that La Habra did not produce any evidence that Patio's stucco was inferior to La Habra's stucco. (Appellant's Opening brief at 6–7.)

Also as noted above, in trademark infringement cases, once a likelihood of confusion is established, it is ordinarily presumed that the plaintiff will suffer irreparable harm. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3, *supra.* The irreparable harm indicated by a finding of likelihood of confusion is not necessarily that the infringing product is inferior to plaintiff's product, as suggested by Patio; instead, the irreparable harm created by continuing infringement consists of the resulting loss of **control** by the plaintiff over its reputation and goodwill. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 526 (9th Cir.1984).

Therefore, the fact that La Habra did not produce any evidence that Patio's stucco was inferior has no bearing on whether the finding of irreparable injury was supported by the evidence. Instead, the court's finding that Patio's brochure created a likelihood of confusion supports a presumption that La Habra would suffer irreparable injury if Patio's use of the infringing brochure was not enjoined. It was Patio's burden to rebut the presumption of irreparable harm with evidence to the contrary. *See Societe de Developments Et D'Innovations des Marches Agricoles et Alimentaires–Sodima–Union de Cooperatives Agricoles v. International Yogurt Co., Inc.*, 662 F.Supp. 839, 843 (D.Or. 1987). Patio points to no such evidence in the record.

Therefore, Patio has failed to show how the bankruptcy court erred by finding that La Habra would suffer irreparable injury if the permanent injunction was not issued.

## VI.

### *DISPOSITION*

The bankruptcy court's order entered August 21, 1995 is affirmed.