755 F.2d 719
 226 U.S.P.Q. 23
 SARDI'S RESTAURANT CORPORATION, Sardi's Restaurant Services,
Inc., and Vincent Sardi, Plaintiffs/Appellants,
v.
Lyle SARDIE and Western Pubs, Inc., Defendants/Appellees.
 C.A. No. 84-5712.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 7, 1985.
Decided March 12, 1985.
 
 Ira M. Siegel, Blakely, Sokoloff, Taylor & Zafman, Beverly Hills, Cal., for plaintiffs/appellants.
 John M. Carmack, Gill & Baldwin, Glendale, Cal., for defendants/appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BOOCHEVER and BEEZER, Circuit Judges, and HARDY,* District Judge.
 BEEZER, Circuit Judge:
 
 
 1
 The owner of "Sardi's" restaurant in New York City appeals a district court's refusal to issue a preliminary injunction against the use of the name "Sardie's" by a restaurant owner in Burbank, California. We affirm.
 
 FACTS
 
 2
 The Sardi family has been operating "Sardi's" restaurant in the New York City theater district since 1921. Although "Sardi's" seldom advertises, it is often featured in television shows, movies and periodicals, and apparently has a national reputation, especially among actors. "Sardi's" is large and expensive, and caters to a diverse clientele that includes celebrities and tourists. Appellant Vincent Sardi, the current owner, has long considered opening a Los Angeles restaurant, but has no immediate or detailed plans for doing so. A stylized "Sardi's" service mark was registered with the U.S. Patent and Trademark Office on October 12, 1982.
 
 
 3
 In early 1983, Hank Berger and appellee Lyle Sardie formed a partnership to develop a small restaurant and singles bar called "Saints and Sinners" in Burbank, California. Appellee ordered a temporary banner with the words "Opening Soon, Saints and Sinners, a great New York style bar and grill." Shortly thereafter, the partnership was dissolved pursuant to an agreement that gave Berger the name "Saints and Sinners" and appellee the property. Lyle Sardie then decided to name his restaurant "Sardie's," and ordered the banner changed to reflect the new name. He did not order any change in the words "a great New York style bar and grill." The banner was hung on the fence surrounding the restaurant site until construction was completed and it was replaced by a permanent sign with the single word "Sardie's". "Sardie's" is now open for business and draws much of its clientele from a nearby television studio.
 
 
 4
 Appellant first heard of the Burbank restaurant when he was contacted by two different people seeking jobs there. He also testified that some Californians who maintained house accounts at the New York restaurant contacted him about the Burbank establishment. Appellant then filed this action, and simultaneously moved for a preliminary injunction.
 
 
 5
 At the injunction hearing, appellant's attorney presented four witnesses who testified that they thought the Burbank restaurant was connected in some way with the New York restaurant. In response to questions from the district judge, the two witnesses who had entered both establishments testified that they were not confused about any affiliation between them after seeing both. At the conclusion of testimony, the district judge expressly acknowledged that "the keystone to any trademark infringement action is likelihood of confusion and not actual confusion."
 
 
 6
 In a written order, the district court denied the motion for a preliminary injunction on the ground that the plaintiffs had not shown either a "realistic possibility of irreparable injury" or a "sharp balance of hardships in favor of plaintiffs." The judge relied in part on the differences between the two restaurants, both of which he had personally visited. The court described the New York establishment as "a very exclusive and expensive theater district restaurant, catering to a high class of patrons." It described the Burbank establishment as "a fairly typical Southern California neighborhood restaurant offering very moderately priced food and simple service." The court added:
 
 
 7
 Without at all denigrating the presentation of the [Burbank restaurant] or its food, service or patronage, it is possible to state as fact that no person even casually familiar with SARDI'S could confuse the two in any respect. The two establishments, being the distance of our continent apart, do not compete with one another geographically. The menus are totally different. The customers are from totally different socio-economic backgrounds. One is intimately identified with New York and its legitimate theater; the other is a neighborhood pub and diner. While hardly determinative of the central legal issues, it is not at all irrelevant that the record supports Mr. Sardie's claim that he has no intent to create confusion or to trade on plaintiffs' well earned reputation....
 
 
 8
 Simply put, the similarities between the two establishments are: (i) both serve food and beverages and (ii) the names above the respective doors surely do pass the idem sonans test. Those common factors are insufficient to establish likelihood of irreparable harm, much less sharp tilt in the balance of hardships. That conclusion might not come so readily if there were any real possibility that SARDI'S would establish a restaurant of the same name on the West Coast. Mr. Vincent Sardi ... testified that he has considered this for many years. In fact, however, he has not done so, and the problems encountered in such an effort are quite obvious to anyone knowledgeable in the restaurant business. He has no plans or program--however ephermeral--to do so, other than the basic idea. Were the same to fructify, the location would obviously be the exclusive Beverly Hills/Century City area--not Burbank.
 
 
 9
 The balance of hardships analysis is an easy call. The defendants have opened a neighborhood restaurant on a shoestring, at least from the standpoint of restaurant presentation and identity, and are trying to make a go of it. Plaintiffs operate a very exclusive and successful New York restaurant to which ordinary folk would not even gain admittance on short notice. Additionally, there is an appropriate judicial reluctance to preclude an individual's business use of his own surname when such is honest and straightforward, with no attempt to confuse the public....
 
 
 10
 In the court's opinion, the only conceivable possibility of confusion in this case would arise in the mind of a person who might assume that Vincent Sardi had indeed opened on the West Coast and, for whatever reason, chosen Burbank as the site of the event. However, that assumption would not survive more than a few minutes inside defendants' establishment. In order to minimize the risk of what the court views as a remote possibility of harm, the order denying preliminary injunctive relief will be conditioned upon a notice of distinctly modest size, at both front and rear entrances to "Sardie's," which will have the effect of disclaiming any connection with plaintiffs' restaurant.
 
 
 11
 Vincent Sardi appeals the decision.
 
 ANALYSIS
 A. Standard of Review
 
 12
 The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court. Its order granting or denying the injunction will be reversed only if the district court abused its discretion.... A district judge may abuse his discretion in any of three ways: (1) he may apply incorrect substantive law or an incorrect preliminary injunction standard; (2) he may rest his decision to grant or deny a preliminary injunction on a clearly erroneous finding of fact that is material to the decision to grant or deny the injunction; or (3) he may apply an acceptable preliminary injunction standard in a manner that results in an abuse of discretion.
 
 
 13
 A district court's order is reversible for legal error if the court did not employ the appropriate legal standards which govern the issuance of a preliminary injunction, ... or if, in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in litigation....
 
 
 14
 Abuse of discretion may occur when the district court rests its decision to grant or deny a preliminary injunction on a clearly erroneous finding of fact.... A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
 
 
 15
 * * *
 
 
 16
 In reviewing the district judge's application of a preliminary injunction test to the substantive legal area and the facts before him, we will not reverse the district court's order simply because we would have reached a different result. To determine whether there has been an abuse of discretion, we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... The [reviewing] court is not empowered to substitute its judgment for that of the [district court.]"
 
 
 17
 Zepeda v. United States Immigration & Naturalization Serv., 735 F.2d 719, at 724-725 (9th Cir.1985) (citations omitted). See also Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d 521, 523 (9th Cir.1984); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir.1975).
 
 B. Legal Standard
 
 18
 A plaintiff is entitled to a preliminary injunction in a trademark case when he demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. Apple Computer, 725 F.2d at 523; William Inglis, 526 F.2d at 86.
 
 
 19
 Appellant correctly asserts that "[i]n order to show a probability of success in the causes of action for trademark infringement, false designation of origin and unfair competition, Appellants need show that ... a likelihood of confusion exists." See 1 J. McCarthy, Trademarks and Unfair Competition Sec. 2:3 (1984) ("the keystone of that portion of unfair competition law which relates to trademarks is the avoidance of a likelihood of confusion in the minds of the buying public"). Appellant then argues that the lower court applied an erroneous legal standard by "requiring actual knowledge and consumers' comparison of [the two] restaurants for there to be likelihood of confusion." In addition, appellant challenges the district judge's reliance on his personal observations of the two restaurants. Appellee replies that the district court had to compare the two restaurants in order to determine the likelihood of confusion, and therefore the probability of success on the merits.
 
 
 20
 Both parties have misread the district court's order. After correctly setting forth the two alternative tests for preliminary injunctions, the trial judge concluded that "on the record neither test has been met. There is neither a realistic possibility of irreparable injury nor a sharp balance of hardship in favor of plaintiffs." The court never addressed the likelihood of confusion or probability of success issues.
 
 
 21
 Moreover, a comparison of the two restaurants in a general sense is relevant to the issue of irreparable harm. At the injunction hearing, Vincent Sardi identified only one potential harm if the public became confused: damage to his reputation if the Burbank restaurant were inferior to his restaurant. It is at least relevant to a determination of possible harm that the restaurants are so different that public comparisons will be minimized. Cf. Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc., 357 F.Supp. 127, 131 (N.D.Ill.1973) (comparing appearance, price and clientele of two restaurants to determine "confusing similarity"), aff'd, 499 F.2d 1183 (7th Cir.1974).
 
 
 22
 Although we agree that any reliance the district judge may have placed on his personal observations of the two establishments was improper, we do not believe the error prejudiced appellant. The judge expressly stated that his memories of "Sardi's" were consistent with the current "format" of the New York restaurant as established by the testimony and photographic exhibits presented at the injunction hearing. The record contains ample evidence apart from the judge's personal recollections to support the court's conclusions.[1]
 
 
 23
 The district court did not apply an erroneous legal standard or abuse its discretion in denying the preliminary injunction on the grounds set forth in its order.
 
 C. Possibility of Irreparable Harm
 
 24
 Appellant asserts that if the trial court had not erroneously failed to find a likelihood of confusion, it would have been forced to find irreparable injury, "since the two follow together." Appellant cites cases to support the proposition that "irreparable injury will almost always be found when there is a high probability of confusion...." Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 486 F.Supp. 414, 429 (S.D.N.Y.1980). See also 2 J. McCarthy, supra at Sec. 30:18; cf. Apple Computer, Inc., 725 F.2d at 526 (once plaintiff demonstrated a likelihood of confusion, trial court "could have reasonably concluded" that irreparable injury would follow). Similarly, some courts have stated that "the infringement of one's trademark usually in and of itself gives rise to the distinct possibility of irreparable injury." Miller Brewing Co. v. Carling O'Keefe Breweries, 452 F.Supp. 429, 437 (W.D.N.Y.1978) (citing inapposite Second Circuit cases).
 
 
 25
 Because the trial court never expressly addressed the issue, it is difficult to determine whether there was sufficient likelihood of confusion to support a finding of irreparable injury. Appellant presented uncontradicted testimony from five witnesses that actual confusion had occurred, which is strong proof of likelihood of confusion. See 2 J. McCarthy, supra at Sec. 23:2. On the other hand, common sense and various authorities suggest that any infringement or confusion must pose a threat to the business, profits or reputation of the plaintiff in order to create a possibility of irreparable harm. See, e.g., 2 J. McCarthy, supra at Sec. 30:18 ("[s]ome courts find sufficient irreparable injury to grant a preliminary injunction in a trademark case when plaintiff shows that, pending trial, it will lose control of its reputation because it rests upon the quality of defendant's activities as a result of a likelihood of confusion of purchasers"); Apple Computer, 725 F.2d at 526 ("once Apple demonstrated a likelihood of success on the merits [because of likelihood of confusion] ... the district court could have reasonably concluded that continuing infringement would result in loss of control over Apple's reputation and loss of goodwill"); Playboy Enterprises, 486 F.Supp. at 432 ("in determining plaintiff's possible harm, the crucial question is not how different the magazines may be but whether there is a danger that plaintiff may lose control of its reputation as a result of confusion").
 
 
 26
 In the case at bar, there was no allegation that the Burbank restaurant would steal the New York establishment's customers pending a trial on the merits, and such an assertion would not be credible in any event. In telling the court why he objected to the California establishment's name, Vincent Sardi modestly explained that "if the [Burbank] restaurant is better than mine, then I'm--I would be damaging him. And if it is not as good as mine, I'd be damaging my reputation." No evidence was presented at the hearing that the Burbank establishment would pose an imminent threat to the New York restaurant's reputation even if public confusion about their relationship did occur. By contrast, the district court's order discussed various factors tending to minimize the possibility of unfavorable comparisons, and the order was fashioned to further reduce such comparisons by requiring the Burbank restaurant to place disclaimer notices on its doors. Since the burden was on appellant to demonstrate a realistic possibility of irreparable harm, and since the possibility of harm was so slight, the trial court did not abuse its discretion in refusing to issue a preliminary injunction. See Apple Computer, 725 F.2d at 526; Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210, 1216 (N.D.Cal.1969).
 
 D. Use of Surname
 
 27
 In weighing the "balance of hardships," the district judge summarized the parties' relative status and economic success. He also noted "an appropriate judicial reluctance to preclude an individual's business use of his own surname when such is honest and straightforward, with no attempt to confuse the public." The court cited two cases that support the proposition. See Taylor Wine Co. v. Bully Hill Vineyards, Inc., 569 F.2d 731, 735 (2d Cir.1978); Friend v. H.A. Friend & Co., 416 F.2d 526, 531 (9th Cir.1969), cert. denied, 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970). Appellant asserts that the court and appellee erroneously relied on the "defense" that a person has an inalienable right to use one's surname in business, regardless of the likelihood of confusion. Although appellee made such an argument under California law in opposing the motion for a preliminary injunction, on appeal he merely asserts that a person may use his own name in his business if reasonable precautions are taken to prevent confusion.
 
 
 28
 Again, appellant misread the trial court's order. The district judge did not refer to any absolute or inalienable right to use one's own name, did not discuss the likelihood of confusion, and did not suggest that use of one's name was a defense to a trademark infringement action. The court's accurate recognition of a "judicial reluctance" to enjoin use of one's own name was merely one factor in its analysis of the balance of hardships.
 
 
 29
 Moreover, although the use of one's surname is not a "defense" to a trademark infringement action, courts generally allow the use of one's own name if reasonable precautions are taken:
 
 
 30
 The concept that there should be some qualified right to use one's own name as a mark, has resulted in a great reluctance of judges to issue an absolute injunction against any use of a personal name mark. Most cases result in an injunction requiring some change in format, the addition of prefixes or suffixes, or disclaimers, while permitting the junior user to retain, in some form, the use of his own name: "... courts are naturally reluctant wholly to forbid a man to do business in his own name and have generally refused to do so. They have, however, insisted that he take whatever precautions the circumstances require to prevent deception...."
 
 
 31
 1 J. McCarthy, supra at Sec. 13:3(D) (quoting Hunt Potato Chip Co. v. Hunt, 340 Mass. 371, 164 N.E.2d 335 (1960)). See, e.g., Friend, 426 F.2d at 534 (Ninth Circuit upholding injunction permitting defendant to use his own surname if accompanied by first name and disclaimer of any affiliation with plaintiff); Taylor, 569 F.2d at 734 (permitting use of full signature on wine label along with disclaimer of any connection with plaintiff's winery); Berghoff Restaurant Co., 357 F.Supp. at 132 (allowing use of surname if accompanied by first name and a disclaimer of affiliation with plaintiff's restaurant).
 
 
 32
 In the case at bar, the trial court conditioned its denial of the preliminary injunction on the placement of notices at the Burbank restaurant disclaiming any connection with the New York establishment. The court did not apply an erroneous legal standard or abuse its discretion in doing so.
 
 E. Balance of Hardships
 
 33
 The district court based its decision that the balance of hardships did not tip sharply in appellant's favor on the fact that the New York concern was much more successful than the struggling Burbank restaurant. The more established restaurant is in a better position to deal with any minor identity problems that might arise than the newer restaurant, which Lyle Sardie explained might not survive at all without a rapid increase in local name recognition. Although the relative size of the respective businesses is not a defense to a suit for a permanent injunction, see Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 357-58 (9th Cir.1948), it is certainly relevant to the potential hardship from changing a business' name. The trial court did not abuse its discretion by finding that the balance of hardships did not tip sharply in appellant's favor.
 
 F. Registration of Mark
 
 34
 Appellant asserts that the trial court erred by failing to find that federal registration of the "Sardi's" mark automatically confirms appellant's exclusive right to use the mark throughout the United States. In fact, although federal registration provides a number of advantages to plaintiffs in trademark infringement cases, certain defenses may still be raised. See generally 1 J. McCarthy, supra at Secs. 13:11, 19:5. More importantly, even if appellant had clearly established his right to exclusive use of the mark, that is only relevant to the likelihood of success or the existence of serious issues on the merits. The trial court denied injunctive relief on the ground that there was neither a showing of irreparable injury nor a sharp tilt in the balance of hardships. The district court therefore did not abuse its discretion in refusing the injunction in spite of appellant's registration.
 
 G. Attorney Fees
 
 35
 Appellant states without elaboration that he is "seeking attorney fees in this action." However, appellant's opening brief does not include "a short statement of the authority pursuant to which" the request is made, as required by the Ninth Circuit rules. See Ninth Circuit Rules 13(b)(1)(E), 14(g). Furthermore, the appeal is meritless. Attorney fees are therefore denied.
 
 CONCLUSION
 
 36
 The trial court's denial of a preliminary injunction is affirmed.
 
 
 
 *
 The Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Appellant also complains about the district judge's unsupported assumptions about the nature of the restaurant business. While statements such as those made by the district judge concerning the problems Vincent Sardi would face in opening a California restaurant and where he should locate it are improper, they did not prejudice appellant. The operative finding was that appellant "has no plans or program--however ephemeral--to [open a California restaurant], other than the basic idea." This conclusion is supported by Vincent Sardi's testimony, and is relevant to the likelihood of irreparable harm