974 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GREATER ANCHORAGE, INC., Plaintiff-Appellee,
v.
Vernon NOWELL, Defendant-Appellant.
GREATER ANCHORAGE, INC., an Alaska corporation, Plaintiff-Appellant,
v.
Vernon NOWELL, Defendant-Appellee.
 Nos. 91-35232, 91-35473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 18, 1992.
Decided Sept. 14, 1992.
 
 Appeal from the United States District Court for the District of Alaska; No. CV-89-0047-JKS, James K. Singleton, District Judge, Presiding.
 D.Alaska
 AFFIRMED.
 Before HUG, D.W. NELSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This is a service mark infringement case. Appellant Greater Anchorage, Inc. argues that appellee Vernon Nowell infringes Greater Anchorage's service mark by using the words "Fur Rendezvous" on the lapel pins he sells even though the pins have disclaimers on them. The district court ruled that Nowell may continue to sell his pins as long as he sells them with the disclaimer, but denied Nowell attorneys' fees. Because Greater Anchorage has failed to provide any evidence that Nowell's use of the words "Fur Rendezvous" serve a nonfunctional purpose, we affirm.
 
 I.
 
 3
 The Fur Rendezvous is a winter festival held in Anchorage, Alaska. The first winter festival in Anchorage was held in 1936 under the name "Winter Sports Tournament." In 1937, a festival was held which was called the "Winter Sports Festival and Fur Rendezvous." A festival called "Anchorage Fur Rendezvous" was held in 1938. Many festivals have been held in the years since. A variety of corporations sponsored these festivals until 1956 when appellant Greater Anchorage, Inc. was incorporated.
 
 
 4
 On October 26, 1976, Greater Anchorage registered the service mark "Fur Rendezvous." A service mark is entitled to the same protection as a trademark. 15 U.S.C. § 1053 (1988); American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 830 n. 1 (9th Cir.1991). Greater Anchorage sells a variety of goods that have the words "Fur Rendezvous" on them, including a commemorative pin that states "50th Anniversary 1935-1985." Along the rim of that pin are the words "Fur Rendezvous 1988 Anchorage Alaska."
 
 
 5
 Nowell owns one of the lapel pennants worn by the Fairbanks Delegation to the 1939 Fur Rendezvous Festival. The pennant has a picture of a wolf with the words "Fur Rendezvous Anchorage Alaska Feb. 18-21 1939." Nowell made a copyrighted photograph of this pennant and subsequently made a pin out of the photograph. In addition to the picture of the pennant, the pin included, on the boundary of the pin, the words "Fur Rendezvous" and "1939 Remembered." Nowell sold the pin at a few places in Anchorage, including at the Fur Rendezvous itself. He did not advertise the pins.
 
 
 6
 When Nowell began selling the pins, he did not know that Greater Anchorage had the service mark for "Fur Rendezvous." When Greater Anchorage objected to Nowell selling the pins, Nowell, in consultation with his attorney, developed a disclaimer, glued to the back of the pins, which states, "This pin, and V.L. Nowell, have no connection whatever with, nor has the pin been approved by, Anchorage Fur Rendezvous, Inc., or Greater Anchorage, Inc." In addition, the disclaimer explains that "Fur Rendezvous is a registered trademark of Greater Anchorage, Inc." Moreover, at the Fur Rendezvous, when Nowell sold these pins, Nowell handed out fliers explaining the history of the festival and the pin, and explicitly stating that "This pin has no connection with nor has it been approved by Anchorage Fur Rendezvous, Inc. or Greater Anchorage, Inc." In addition, these new pins no longer have the words "Fur Rendezvous" along the boundary of the pin. The words "Fur Rendezvous" only appear on the pennant.
 
 
 7
 Greater Anchorage was not satisfied with these steps. It attempted to confiscate the pins from Nowell at his booth at the Fur Rendezvous. Customers at Nowell's booth at the 1989 Fur Rendezvous told him that people at other booths had told them that Nowell's pins were illegal. Nowell's attempts to enter into a licensing agreement with Greater Anchorage were unsuccessful.
 
 
 8
 Greater Anchorage filed a complaint in federal court, alleging that Nowell had infringed its service mark in violation of 15 U.S.C. § 1114. It sought damages and an injunction preventing Nowell from selling any pins. Greater Anchorage refused to enter into settlement negotiations. Both parties moved for summary judgment.
 
 
 9
 The district court found that the pins without the disclaimer were likely to cause confusion but that the pins with the disclaimer were not likely to cause confusion. The court therefore enjoined Nowell from selling pins without the disclaimer but permitted Nowell to sell the pins with the disclaimer as long as he also included similar disclaimers in any advertising and at sales outlets for the pins. The district court also denied summary judgment on the issue of damages, and denied Nowell's motion for attorneys' fees.
 
 
 10
 Greater Anchorage appeals the district court's decision to permit Nowell to sell pins with the disclaimer language. Nowell appeals the district court's denial of attorneys' fees.
 
 II.
 A.
 
 11
 The district court had jurisdiction under 28 U.S.C. § 1338(a) and we have appellate jurisdiction under 28 U.S.C. § 1292. We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the correct substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-41 (9th Cir.1989). We review the district court's denial of attorneys' fees for an abuse of discretion. Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985), cert. denied, 474 U.S. 1059 (1986).
 
 
 12
 Greater Anchorage contends that Nowell's pins violate 15 U.S.C. § 1114(1)(a) (1988), which provides:
 
 
 13
 (1) Any person who shall, without the consent of the registrant--
 
 
 14
 (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive....
 
 
 15
 shall be liable in a civil action by the registrant for the remedies hereinafter provided.
 
 
 16
 Greater Anchorage argues that it has an exclusive right to use the words "Fur Rendezvous" because it has registered that mark. Registration of a mark, however, does not automatically result in an exclusive right to use the mark. Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 726 (9th Cir.1985).
 
 
 17
 Greater Anchorage also claims that Nowell has unfairly benefitted from its service mark. A party does not infringe a mark simply because that party benefits from the existence of the mark. " '[O]ne can capitalize on a market or fad created by another provided that it is not accomplished by confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor.' " Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 919 (9th Cir.1980) (quoting American Footwear Corp. v. General Footwear Co., Ltd., 609 F.2d 655, 662 (2d Cir.1979), cert. denied, 445 U.S. 951 (1980)), cert. denied, 452 U.S. 941 (1981). Thus, Nowell did not infringe Greater Anchorage's trademark simply because the Fur Rendezvous may have created a market for his pins.
 
 
 18
 The primary issue in cases arising under section 1114 is whether the public is likely to be confused about the maker, sponsor, or endorser of a product. Job's Daughters, 633 F.2d at 917. Whether there is a likelihood of confusion is a question of fact, Eclipse Assoc. Ltd. v. Data General Corp., 894 F.2d 1114, 1118 (9th Cir.1990), and the plaintiff bears the burden of proof, Americana Trading, Inc. v. Russ Berrie & Co., 966 F.2d 1284, 1287 (9th Cir.1992).
 
 
 19
 Greater Anchorage argues that disclaimers cannot eliminate the likelihood of confusion. This court, however, has determined that a disclaimer can be an appropriate way of avoiding the likelihood of confusion. See, e.g., Sardi's, 755 F.2d at 725-26; Friend v. H.A. Friend & Co., 416 F.2d 526, 530-31 (9th Cir.1969), cert. denied, 397 U.S. 914 (1970). The question is whether the product, including the disclaimer, is likely to confuse the consumer as to the source or sponsorship of the goods.
 
 
 20
 If the use of a mark serves only a functional purpose, there is not a likelihood of confusion. "Trademark law does not prevent a person from copying so-called 'functional' features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." Job's Daughters, 633 F.2d at 917. As this court recognized in Job's Daughters,
 
 
 21
 It is not uncommon for a name or emblem that serves in one context as a collective mark or trademark also to be merchandised for its own intrinsic utility to consumers. We commonly identify ourselves by displaying emblems expressing allegiances. Our jewelry, clothing, and cars are emblazoned with inscriptions showing the organizations we belong to, the schools we attend, the landmarks we have visited, the sports teams we support, the beverages we imbibe. Although these inscriptions frequently include names and emblems that are also used as collective marks or trademarks, it would be naive to conclude that the name or emblem is desired because consumers believe that the product somehow originated with or was sponsored by the organization the name or emblem signifies.
 
 
 22
 Id. at 918.
 
 
 23
 The Job's Daughters court concluded that, in determining whether the use of a name serves solely a functional purpose, or whether it serves to identify the trademark owner as the source or sponsor of goods, "a court must closely examine the articles themselves, the defendant's marketing practices, and any evidence that consumers have actually inferred a connection between the defendant's product and the trademark owner." Id. at 919.
 
 
 24
 In Job's Daughters, the alleged infringer produced jewelry bearing the insignia of Job's Daughters, a fraternal organization. The court concluded that the name and emblem were "functional aesthetic components of the jewelry, in that they are being merchandised on the basis of their intrinsic value, not as a designation of origin or sponsorship." Id. at 918; cf. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1506-07 (9th Cir.1987) (directed verdict against trade dress infringement claim appropriate when facial features of plaintiff's artificial animal heads were functional).
 
 
 25
 In Vuitton et Fils S.A. v. J. Young Enterprises, Inc., 644 F.2d 769, 776 (9th Cir.1981), this court determined that there was a material issue of fact regarding the functionality of the fabric design on Vuitton's luggage. The court based its decision in large part on a luggage buyer's affidavit which stated that people did not buy Vuitton's luggage because they found the design aesthetically pleasing; rather, the design contributed to the luggage's commercial success because it associated the product with Vuitton. Id. at 776.
 
 
 26
 Greater Anchorage had the burden of proving that its mark serves a nonfunctional purpose. Rachel, 831 F.2d at 1506. Therefore, it was incumbent upon Greater Anchorage to present some evidence raising a genuine issue of fact regarding the functionality of the mark on Nowell's pin.
 
 
 27
 Unlike in Vuitton, the plaintiff here has presented no evidence that people buy the defendant's product because they believe the plaintiff is the source or sponsor of the defendant's goods. In fact, according to Nowell's interrogatory responses, customers actually believed that the pins were "illegal." Thus, there is no evidence that people actually believe that Nowell's pins are associated with Greater Anchorage.
 
 
 28
 We must also consider Nowell's marketing practices. Nowell sells his pins at the Fur Rendezvous. By itself, this might lead a customer to believe that the Fur Rendezvous approved of the pins. Given the point of sale disclaimers, however, as well as the disclaimers on the pins, it is very unlikely that someone will believe that Greater Anchorage endorsed or produced the pins. Furthermore, the words "Fur Rendezvous" now appear only on the photograph portion of the pin. The additional lettering does not include the words "Fur Rendezvous." This further minimizes any possibility of confusion.
 
 
 29
 The present case is analogous to Job's Daughters. The words "Fur Rendezvous" on Nowell's pins serve an aesthetic purpose only. There is no evidence that people would be likely to buy Nowell's pins because they believe that the pin was produced or endorsed by Greater Anchorage. Nowell's use of the words "Fur Rendezvous" therefore serves a functional purpose only, and does not create a likelihood of confusion.
 
 B.
 
 30
 Nowell appeals the district court's denial of attorneys' fees. A prevailing party may recover attorneys' fees under 15 U.S.C. § 1117 "only in 'exceptional cases,' 15 U.S.C. § 1117, such as where the opposing party is guilty of 'extraordinary, malicious, wanton, and oppressive conduct.' Transgo, Inc., 768 F.2d at 1026." Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir.1991). Although Greater Anchorage may have blindly pursued this suit despite the small likelihood of success, and obstinately refused to enter into settlement negotiations, it is not clear that Greater Anchorage has acted in an extraordinary or malicious manner. Therefore, we cannot say that the district court abused its discretion by denying Nowell attorneys' fees.
 
 
 31
 The district court's judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3