**NVST.COM INC., Plaintiff–Appellant,**

v.

**NVEST, LLP, et al., Defendants–Appellees.**

No. 01–35480.

D.C. No. CV–00–1914–TSZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2001.

Decided Feb. 7, 2002.

Before REAVLEY,* B. FLETCHER, and TALLMAN, Circuit Judges.

## MEMORANDUM **

NVST appeals the district court's denial of a preliminary injunction barring appellee Nvest from continuing its use of certain Internet domain names containing the letter string "nvest." NVST contends that Nvest is using the domain names in violation of a consent agreement between the parties. NVST also believes it will likely prevail on its trademark infringement claim at trial. The district court disagreed, concluding that NVST did not establish its probable ability to prove a likelihood of consumer confusion caused by Nvest's allegedly infringing activities. The court also determined that NVST was unlikely to prevail on its claim that Nvest breached the consent agreement. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We affirm.

## FACTUAL BACKGROUND

NVST uses the Internet to market private equity investment opportunities and related products, such as merger and acquisition information and research. NVST owns the United States Service Mark Registration for NVST as well as the registrations for Internet domain names nvst.com and nvest.com.

Nvest comprises a family of mutual fund and other investment services targeting individual consumers as well as brokers and dealers. Nvest began in 1993 as New England Investment Companies L.P. (NEIC). NEIC launched its "New England Funds" the same year. As part of a 1997 reorganization, NEIC decided to change its corporate name to Nvest.

Prior to adopting its new name, NEIC contacted NVST. In January, 1998 NEIC's Neil Litvack and NVST principal Lori King negotiated a consent agreement aimed at ensuring that the new Nvest would not infringe on NVST's trademark. Ms. King edited Mr. Litvack's draft and the two parties initialed the changes and affixed their signatures on January 28, 1998. The two middle paragraphs appear below as drafted by Mr. Litvack and edited by Ms. King; additions appear in **bold face** and deletions appear struckthrough.

> To confirm, I believe we have reached agreement that NEIC's use of "Nvest" is not likely to cause any confusion, mistake or deception relating to NVST, L.L.C. or its services. Therefore, on behalf of NVST, L.L.C., you (1) have consented to NEIC's use of "Nvest" in connection with its global business activities, including without limitation use as a corporate or trade name, as a stock exchange listing or in any other way NEIC sees fit **except as the Internet domain name** *www.nvest.com* and, in addition, (2) have agreed, in connection with any registration of "NVEST" in the United States or abroad in support of such use by NEIC, to submit the express written consent of NVST, L.L.C. to such use by NEIC, at NEIC's request.

> In addition, we confirm that we will give most serious consideration to use of your firm to assist us at such time as we seek to establish an Internet home page for "Nvest," which we intend to use primarily as the name of the NEIC "holding company." **presence.** In any

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

event, however, we will consult with NVST, L.L.C. prior to establishing ~~"Nvest" as~~ an Internet domain name to the end that the manner and style of our use of "Nvest" will not conflict with or cause confusion with respect to your use as an Internet domain name ~~of NVST, L.L.C.~~ **www.nvst.com.** NEIC formally changed its name to Nvest Companies, L.P. in March 1998.

As promised, Nvest considered enlisting NVST's help with establishing its web presence. In April, 1998, Nvest's Laurence Dwyer met with NVST's Lori King in Boston to discuss possible collaboration. Ms. King followed up the meeting with a written proposal whereby NVST would create and host Nvest's web site. After several more exchanges, Nvest opted to contract with another vendor. Mr. Dwyer also reportedly informed Ms. King that Nvest planned to use the domain name nvestlp.com, which the company had registered on March 5, 1998. Mr. Dwyer contends that Ms. King raised no objections to the use of the "nvest" letter string in the new domain name. Ms. King denies that she was alerted to Nvest's plans to use either nvestlp.com or nvestfunds.com as Internet domain names. She maintains that, had Mr. Dwyer in fact told her of his company's domain name plans, she "would not have agreed to let Defendants use 'nvestlp.com' as a domain name for establishing an Internet presence."

## STANDARDS OF REVIEW

■ We review a district court's denial of a preliminary injunction for an abuse of discretion. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir.1999). Reversal is appropriate only if the district court based its determination on clearly erroneous findings of fact or erroneous legal principles. *Id.* at 1046.

■ Contract interpretation is a question of law subject to de novo review. *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1121 (9th Cir.2000).

■ We review a legal and factual determination of likelihood of confusion under trademark laws for clear error. *GoTo.com v. The Walt Disney Co.*, 202 F.3d 1199, 1204 (9th Cir.2000).

## DISCUSSION

■ NVST is entitled to a preliminary injunction if it demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir.1985). These two means of justifying a preliminary injunction are "two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Oakland Tribune, Inc. v. The Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985). Under either formulation, a plaintiff must demonstrate some significant threat of irreparable injury to warrant preliminary injunctive relief. *Id.*

*Nvest's Alleged Consent Agreement Breach*

■ NVST asserts that Nvest breached the consent agreement by using domain names containing the nvest letter string without obtaining NVST's prior permission. Based on NVST's own editorial changes to the agreement's second paragraph, the parties agreed that Nvest may use the letter string in any way it sees fit, "except as the internet domain name *www.nvest.com.*"

In the agreement's third paragraph, Nvest promised to "give most serious consideration" to using NVST as a vendor when Nvest embarked on creating a web presence. Nvest appears to have made good on this promise, as witnessed by the affidavits of both Lori King and Laurence Dwyer; according to this evidence, Nvest talked at length with NVST before finally choosing another vendor.

Under the agreement, Nvest also promised to "consult with NVST, L.L.C. prior to establishing an Internet domain name to the end that the manner and style of our use of 'Nvest' will not conflict with or cause confusion with respect to your use as an Internet domain name, *www.nvst.com.*" NVST alleges that Nvest violated this part of the agreement when it established domain names containing the nvest letter string prior to consulting with NVST. Even if NVST is able to demonstrate that in one or more instances Nvest began receiving Internet traffic at the domains in question, NVST offers no showing of damage arising as a result of any delayed notification.[1] Moreover, since the sentence in question promises only consultation and not veto power for NVST, even if Nvest had provided ample prior notice there is nothing to suggest it would have yielded to any objections NVST might have raised. NVST has failed to demonstrate either irreparable harm or a balance of hardships tipping sharply in its favor as required for issuance of a preliminary injunction. *See Oakland Tribune,* 762 F.2d at 1376

The district court did not abuse its discretion when it denied a preliminary injunction based on NVST's contract claim.

*Trademark Infringement: Likelihood of Confusion*

■ NVST also puts forward a trademark infringement claim. We must uphold the district court's denial of a preliminary injunction if we determine that the district court judge did not abuse his discretion in concluding that NVST did not demonstrate probable success or even raise serious questions with respect to its trademark infringement claim under the likelihood of confusion standards set forth in *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979).

■ The *Sleekcraft* court articulated eight non-exhaustive factors relevant to a determination of likelihood of confusion. These include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft,* 599 F.2d at 348–349.

NVST complains that the district court did not provide the factor-by-factor analysis by which it arrived at its conclusion that NVST failed to demonstrate likelihood of confusion. However, in this circuit, "[a]t the preliminary injunction stage of a proceeding, the trial court is not required to consider all the factors set forth in *Sleekcraft.*" *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1384 (9th Cir. 1987) (holding that for the limited purpose of a preliminary injunction motion, differences in labels alone were sufficient to

---

1. Procurement of a domain name alone does not constitute "use" in commerce. At least for Lanham Act purposes, this circuit has held that "use" begins when a mark is used in conjunction with the actual sale of goods and services. *Brookfield Communications,* 174 F.3d at 1051. *See also Lockheed Martin Corp. v. Network Solutions, Inc.* 985 F.Supp. 949, 957 (C.D.Cal.1997) (holding that something more than simple domain name registration required before use can infringe).

sustain a finding of no likelihood of confusion).

The district court cited to *GoTo.com*, 202 F.3d at 1205, in which we analyzed the three factors we identified in *Brookfield Communications* as most important in the Internet context: (1) similarity of the marks, (2) relatedness of the goods and services, and (3) the simultaneous use of the World Wide Web as a marketing channel.

First, we consider how similar NVST (the protected mark) is to allegedly infringing domains such as nvestfunds.com and nvestlp.com. *Brookfield Communications*, 174 F.3d at 1055 (noting that the allegedly infringing domain name must be compared to the protected trademark, rather than to a derivative domain name). The parties' respective marks differ by the inclusion of the letter "e" in one mark where it is absent in the other. Moreover, NVST typically appears in all capital letters, while Nvest appears in title case. Furthermore, the comparison is not between Nvest and NVST, but between NVST and the allegedly infringing domain names, all of which incorporate additional words alongside the nvest letter string. The district court's finding that the marks are not very similar was not clear error.

Second, the two companies provide very different services. As we have held, "[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Communications*, 174 F.3d at 1055. NVST offers research services and investment opportunities for wealthy individuals seeking equity stakes in emerging companies—so-called "angel investors"—as well as investors and business people tracking merger and acquisition opportunities. Nvest, by contrast, provides more traditional investment products for individuals and organizations such as mutual funds

and retirement planning services. The two companies market to entirely different clienteles.

Third, both companies do use the web as a marketing vehicle. In *GoTo.com* we concluded that "the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since ... it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com*, 202 F.3d at 1207. In this case, however, the litigants' respective web pages look considerably different and offer entirely different products. This factor is weak in this case. The district court did not clearly err by refusing to find otherwise.

We address some of the remaining *Sleekcraft* factors briefly.

NVST offers evidence of actual confusion in the form of several e-mails misaddressed to nvest.com when they were actually meant to reach nvst.com. NVST does not, however, offer evidence that any confusion has harmed NVST: because NVST owns the nvest.com domain, all mail accidentally sent to that domain automatically forwards to NVST. To the extent that NVST receives e-mail intended for the Nvest, no harm befalls NVST or any of its customers.

The degree of care exercised by typical users of the parties' products also militates against a finding that confusion is likely. NVST's customers—who are considering large investments—can certainly be expected to plan their purchases carefully enough that they will not accidentally invest in Nvest's mutual funds by mistake. Similarly, an Nvest customer looking for retirement planning information will quickly realize that NVST.com is not the place to find it. Thus, confusion by actual users of the web sites and actual consumers of the parties' services is unlikely.

Finally, given the differences between the two companies' products and services

and the high start-up costs involved in entering either market, it is unlikely that either company will expand its product line to impinge on the other's. NVST offers no evidence to the contrary, thus this factor also weighs against finding a likelihood of confusion.

The district court did not commit clear error in making the factual findings underpinning its determination that NVST failed to show a likelihood of confusion and thus failed to demonstrate a probability of success on the merits. Even holding NVST to the lower threshold of demonstrating that serious issues exist going to the merits, the company's failure to show any evidence of irreparable harm—much less a balance of hardships tipping sharply in its favor—demonstrates that the district court did not abuse its discretion in concluding that a preliminary injunction was inappropriate.

AFFIRMED.